# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| PATTY S. SEYMOUR, | : | |
| Plaintiff, | : | Case No. 2:16-cv-00744 |
| v. | : | JUDGE ALGENON L. MARBLEY |
| COMMISSIONER OF SOCIAL SECURITY, | : | Magistrate Judge Vascura |
| Defendant. | : | |

## OPINION & ORDER

This matter comes before the Court on Plaintiff Patty S. Seymour's ("Seymour") Objection to Magistrate Judge Kemp's June 8, 2017 **Report and Recommendation** (Doc. 23). Upon independent review by this Court, and for the reasons set forth below, Seymour's Objection is hereby **OVERRULED**. The Court **ACCEPTS** and **AFFIRMS** the Magistrate Judge's **Report and Recommendation**.

## I. BACKGROUND

Seymour applied for Supplemental Security Income ("SSI") benefits on December 20, 2012. She alleges that she became disabled on that date. After initial administrative denials of her application, Administrative Law Judge Glaze (the "ALJ") conducted a hearing on January 6, 2015. On February 18, 2015, the ALJ issued a decision finding that Seymour was not disabled within the meaning of the Social Security Act.

In his opinion denying benefits, the ALJ conducted the required five-step sequential analysis for a disability benefits claim established by the Social Security Administration. *See* 20

C.F.R. § 416.920(a)(4).[1]  At step one, the ALJ determined that Seymour has not engaged in substantial gainful activity since December 20, 2012.

At step two, the ALJ found that Seymour had severe impairments including a learning disorder, borderline intellectual functioning, a personality disorder, and a depressive disorder.

At step three, the ALJ further found that these impairments, singly or in combination, did not meet or medically equal one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found that Seymour had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with certain non-exertional limitations.[2]

---

[1] The five sequential steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 416.920(a)(4).

The ALJ's assessment of Seymour's medical impairments and her RFC determined that while Seymour's impairments could reasonably be expected to produce her symptoms, the symptoms were not frequent, enduring, or severe enough to reduce Seymour's RFC or to preclude all work activity.

The ALJ's determination of Seymour's RFC was based on a consideration of the entire case record, including Seymour's school records, medical evidence, testimony from Seymour, and opinion testimony from several consultants, psychologists, and counselors.

Upon evaluating the totality of the record and determining that Seymour's symptoms were not substantiated by the objective medical evidence, the ALJ then weighed both Seymour's credibility and each of the treating and evaluating consultants', psychologists', and counselors' medical opinions.

First, the ALJ determined that statements made by Seymour were largely non-credible, due to frequent inconsistencies and indications that she exaggerated her limitations, potentially driven by a desire to obtain SSI benefits.

The ALJ next assigned great weight to the opinion assessments of state agency consultants—Dr. Rudy and Dr. Demuth—because the ALJ determined these consultants have a specific and thorough understanding of state disability programs and their evidentiary requirements. The consultants opined that while Seymour had mental health limitations, these

---

[2] The ALJ found the following non-exertional limitations on Seymour's ability to perform a full range of work: Seymour requires simple instructions and must perform simple work; Seymour's usual work setting must include a repetitive day-to-day routine with only limited expected changes; Seymour can respond appropriately to occasional interaction with supervisors and co-workers on trivial, non-adversarial matters; Seymour must be precluded from high production quotas such as assembly line work and strict production quotas; Seymour must be taught tasks instead of being required to read them; Seymour could only be expected to perform basic math; and Seymour should not work directly with the general public.

limitations would not prevent all work activity, an evaluation the ALJ deemed consistent with the objective evidence in the case record.

The ALJ also assigned significant weight to the opinion of the state-agency consultative examiner, Dr. Peterson, because she observed Seymour in person and noted Seymour had the capacity to perform work with certain limitations, consistent with the entire record.

The ALJ assigned little weight to the opinion assessments of two counselors—Ms. Lint and Ms. Whalen—because their notes were inconsistent with the overall record and as counselors, they are not considered an acceptable medical source by the Social Security Rules and Regulations.

Lastly, the ALJ assigned partial weight to the initial opinion of psychologist Dr. Yee, who opined that with treatment, Seymour would be capable of working in a supportive setting and completing basic tasks. However, the ALJ gave Dr. Yee's later assessments little weight, noting that Dr. Yee overstated Seymour's limitations in a manner inconsistent with the entire record.

The ALJ then applied Seymour's RFC at both step four and step five. At step four, the ALJ found that Seymour had no past relevant work. At step five, relying on vocational expert ("VE") testimony, the ALJ found that based on Seymour's RFC, and given her age, education, and work experience, Seymour could perform occupations that exist in significant numbers in the national economy, such as kitchen helper, laboratory equipment cleaner, or cook's helper.

Based on this five-step sequential analysis, the ALJ found that Seymour was not disabled under the Social Security Act.

The Appeals Council denied Seymour's request for review of the ALJ's determination on May 31, 2016, thereby rendering the ALJ's benefits-denial decision the Commissioner's final

agency action. Seymour then filed suit in federal court, alleging in her Statement of Errors that the ALJ's finding was incorrect because his assessed RFC focuses on Seymour's improvement with treatment in 2014, but assesses only one RFC for the entire time period (12/20/2012–2/18/2015). Seymour argues that the ALJ's focus on her post-treatment condition disregards evidence of her disability prior to receiving treatment, and thus her RFC was not based on substantial evidence. Seymour also alleges that the ALJ erred in not considering all the Global Assessment of Functioning ("GAF") scores in the record.

On June 8, 2017, the Magistrate Judge recommended that this Court overrule Seymour's Statement of Errors and affirm the Commissioner's denial of benefits. Regarding Seymour's first alleged error that the ALJ did not consider pre-treatment evidence in assessing Seymour's RFC, the Magistrate noted that the ALJ's RFC decision was based in large part on records and consultative examinations from 2012 and 2013. Thus, the Magistrate determined that "the premise of the Plaintiff's argument—that the ALJ simply disregarded any evidence about the severity of her mental impairments from 2013 and early 2014—is not borne out by the record." (Doc. 23, PageID 778). The Magistrate next rejected Seymour's second alleged error—the ALJ's failure to consider all recorded GAF scores—as a grounds for reversal, noting that "GAF scores, while perhaps helpful in assessing a social security claimant's level of functioning, provide only a 'snapshot' of that functioning and do not correlate directly to the disability criteria used by the Social Security Administration." (Doc. 23, PageID 779)

Thus, the Magistrate recommended to this Court that Seymour's statement of errors be overruled and judgment be entered in favor of the Commissioner. Seymour timely objected.

## II. STANDARD OF REVIEW

Upon objection to a magistrate judge's report and recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b). This de novo review, in turn, requires the Court to "determine whether the record as a whole contains substantial evidence to support the ALJ's decision" and to "determine whether the ALJ applied the correct legal criteria." *Inman v. Astrue*, 920 F. Supp. 2d 861, 863 (S.D. Ohio 2013). Substantial evidence means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quotation omitted). Substantial evidence constitutes "more than a mere scintilla, but only so much as would be required to prevent judgment as a matter of law against the Commissioner if this case were being tried to a jury." *Inman*, 920 F. Supp. 2d at 863 (citing *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988)).

## III. ANALYSIS

Seymour objects to the Magistrate Judge's Report and Recommendation on the ground that the ALJ erred by assessing only one RFC for Seymour's entire alleged disability period, rather than a more-restrictive RFC prior to Seymour showing improvement in 2014 and a less-restrictive RFC after this improvement. Seymour requests that the Court reverse the Commissioner's denial of her benefits claim because of this alleged error.

**A. The ALJ's Assessment of One RFC Is Supported by Substantial Evidence.**

Seymour objects to the Magistrate Judge's recommendation regarding the ALJ's assessment of one RFC for Seymour's entire alleged disability period (12/20/12–2/18/15). Seymour alleges that the ALJ's focus on her improvement with treatment and medication in

6

2014 is inconsistent with the assessment of one RFC, but rather demands two distinct RFCs (one RFC prior to treatment, medication, and improvement and one RFC subsequent) (Doc. 24, PageID 783 ("[T]he ALJ's finding that the whole of the evidence demonstrates improvement in the condition is inconsistent with the assessment of one RFC for the whole time period. . .")). Thus, Seymour argues that the assessment of one RFC for the entire period does not account for her limitations before her condition improved and therefore is not supported by substantial evidence. Reviewing the record in its entirety, this Court disagrees with Seymour and finds substantial evidence in the record to support the assessment of one RFC for the entire time period.

The ALJ is tasked "with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [her] residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). In determining Seymour's RFC, the ALJ relied heavily upon the medical opinion testimony of the state agency consultants—Dr. Rudy and Dr. Demuth—and the consultative examiner, Dr. Peterson. The ALJ relied on these opinions, in large part, because he found Seymour to be inconsistent and unreliable, exaggerating her limitations in order to obtain SSI benefits. The ALJ afforded less weight to the opinion testimony of Ms. Lint, Ms. Whalen, and Dr. Yee. This is the ALJ's prerogative and within her discretion. *See Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) ("[T]he ALJ's decision to accord greater weight to state agency physicians over [Plaintiff's] treating sources was not, by itself, reversible error.").

The ALJ concluded that Dr. Rudy's and Dr. Demuth's "assessments [were] generally consistent with the totality of the medical evidence of record showing some limitations in each area of mental health functioning, but not such great limitations that would preclude work

activity." (Doc. 10, PageID 750). Dr. Peterson determined that Seymour would be able to perform work, subject to specific limitations. (Doc. 22, PageID 762 (noting that while Seymour could carry out basic work-related tasks, she "would have some limitation in maintaining concentration, persistence, and pace in a work setting, would be expected to perform best in a work environment with minimal contact with others, and her intellectual and mental functioning would limit her abilities to respond appropriately in a work setting to stress or pressure.")). The ALJ noted that the state agency consultants in particular were "well qualified by reason of training and experience in reviewing an objective record and formulating an opinion as to limitations." (Doc. 10, PageID 75); *see* 20 C.F.R. § 416.927(e)(2)(i) ("Program physicians, psychologists, and other medical specialists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."). Thus, it was reasonable for the ALJ to give significant weight to this opinion testimony in determining Seymour's RFC.

This opinion testimony upon which the ALJ's determination of Seymour's RFC was based occurred before Seymour's treatment, medication, and subsequent improvement in 2014. Dr. Rudy examined Seymour in April 2013, Dr. Demuth examined Seymour in June 2013, and Dr. Peterson evaluated Seymour in March 2013. Their evaluations informed the ALJ that, even before Seymour began demonstrating improvement, Seymour had the ability to perform a range of work, subject to certain limitations, and was not disabled. Seymour's improvement as a result of treatment and medication in 2014 only heightened her ability to work and thus would not reduce her RFC. Seymour's assessed RFC properly accounted for all of her limitations, both before and after her improvement in condition. The totality of the record contains substantial evidence that Seymour retained the ability to perform limited work throughout her entire alleged

period of disability. Thus, it was reasonable and appropriate for the ALJ to assess only one RFC for the entire period.

As explained more thoroughly in the Report and Recommendation, the ALJ fairly weighed the evidence as a whole, relying heavily on medical opinion testimony rendered prior to Seymour seeking treatment and medication and showing substantial improvement. Accordingly, the Court **ACCEPTS** the Magistrate Judge's Report and Recommendation on this point and **AFFIRMS** the Commissioner's decision.

## IV.  CONCLUSION

For these reasons, the Court **ACCEPTS** and **AFFIRMS** Magistrate Judge Kemp's **Report and Recommendation** (Doc. 23), thereby **OVERRULING** Seymour's objection (Doc. 24). The Commissioner's denial of benefits is **AFFIRMED**. This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

    **/s/ Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  September 13, 2017**